UTICA,
July, 1834.

Williams
v.
Littlefield.

---

WILLIAMS & MOBLEY *vs.* LITTLEFIELD.

Where orders are given to a *factor*, to purchase at an extended credit and to forward goods of a particular description, and from the character of the market for which they are intended, it is important, that they should be *delivered forthwith :* and the purchase is made and the goods forwarded to a correspondent of the factor, with instructions not to deliver them to the *principal* until paid for in cash, or approved paper given, payable in *ninety days*, when the factor had purchased at a credit of *six months ;* and the goods after arrival and before delivery are *consumed by fire* while in the possession of the correspondent of the factor, the loss falls upon the *factor*, and not upon the *principal.*

Whether a *purchasing factor* or agent has or has not a lien upon goods purchased by him for his principal, until reimbursed his advances, or secured his responsibilities ; and whether, where the agent in such case asserts his right of lien and the goods are consumed by fire before coming to the actual possession of the principal, the loss falls upon the principal or upon the agent, *quere.*

ERROR from the superior court of the city of New-York. Littlefield sued Williams and Mobley, to recover the value of

20 pieces of cotton bagging, alleged by him to have been pur-
chased and forwarded to the defendants, and for his commis-
sion, &c. In 1827, when the transaction took place, *Little-
field* was a commission merchant in the city of *New-York*, and
in that character had for several years transacted business for
Williams & Mobley, merchants, residing at *Suggsville*, in
Alabama, a distance of about 150 miles from Mobile. On
the 21st *August*, 1827, Williams, then at Boston, wrote Little-
field *desiring him to purchase and forward by the first opportu·
nity* 20 *pieces best hemp bagging and to make the terms as favor-
able as possible*. On the 31st *August*, Littlefield wrote Williams
acknowledging the receipt of his letter, and saying that no
vessel would probably leave for Mobile before 15th Septem-
ber, and that his order would be attended to, unless he was
heard from to the contrary in season. On 10th *September*,
Williams again wrote from Boston to Littlefield, saying that
he knew of no bagging at that place, and would expect him
to ship the quantity specified in his last letter, *on the best terms
practicable*. On the same day that this last letter was written
at *Boston*, Littlefield made a purchase at *New-York* of 20 pie-
ces of cotton bagging, amounting to $284,05, for which he
gave his *own note*, payable in *six months*, and shipped the bag-
ging to the house of *Robertson & Barnwall*, at Mobile, to which
place goods for *Suggsville* are usually sent, with instructions
to forward it to Williams & Mobley, on receiving *cash* or
*approved notes* for the amount, payable in 90 days, and not
otherwise. On the 11th September, Littlefield addressed a
letter to Williams & Mobley, at ·Suggsville, apprising them
of the purchase of the bagging, its shipment, and the instruc-
tions given to the consignees. The bagging was received by
*Robertson & Barnwall*, on the 18th October, and three days
thereafter their store was consumed by fire, with nearly all its
contents, including the bagging. About ten days after the
fire, an agent of Williams & Mobley called on Robertson &
Barnwall, and asked for the delivery of the bagging, and was
informed by them of its destruction; although it appeared
that both Mobley at *Suggsville* and Williams at *Boston*, on
being apprised of the terms upon which the bagging had
been shipped, expressed their determination not to accept it.

UTICA,
July, 1834.

Williams
v.
Littlefield.

UTICA,
July, 1834.

Williams
v.
Littlefield.

In September, 1828, this suit was commenced, and on the trial of the cause the above facts were shown. The plaintiff also proved that several acceptances of Williams & Mobley had in the course of the year been protested, viz. one for about $1000 in March, another for about $400 in *May*, and another for about $1000 on the 24th *August*, 1827. In relation to this last acceptance, however, it appeared that Littlefield was apprised by Williams' letter of 21st August, 1827, that it would be protested, in which he adverted to its falling due on the 24th August, and stated that he was without funds, but expected some in a few days. From the correspondence between the parties, exhibited on the trial, it also appeared that previous to the purchase of the bagging, Williams & Mobley were in arrear and indebted to Littlefield, and had not been punctual in their payments. On the part of the defendants, however, it was shown, that in the autumn of 1827 their credit was as good as that of country merchants in general, that they had not stopped payment or failed, and have not since failed; that it is common for merchants in good standing in the interior of Alabama not to pay their acceptances when due—which was sometimes occasioned by the low water in the rivers preventing produce from reaching market. That it is often the case in Alabama, that persons of undoubted responsibility and credit do not pay their acceptances when due, and yet such omission is not considered as destroying their credit. They also proved that the house of *Robertson & Barnwall,* were not their agents at Mobile, but that their business at that place was conducted by the house of *Robinson & Davenport* and sometimes by *Dobson & Williams*; that Littlefield knew that those houses transacted the business of the defendants at Mobile, and in *May*, 1827, shipped goods to the defendants, consigning them to *Robinson & Davenport.* A former partner of the plaintiff testified that while in partnership with the plaintiff, his firm had shipped goods to the defendants, consigned to *Robinson & Davenport;* that he had never known goods shipped by the plaintiff for the defendants with instructions not to deliver until security was given, though he said he knew not of any purchases by the plaintiff for the defendants *without funds;* but he knew of his

accepting their drafts without funds. It was also proved, on the part of the defendants, that cotton bagging was usually sold in New-York for *city acceptances* on a *credit of from four to six months ;* that it is usually shipped to the *south* from the first of *September* to the first of *October,* and is among the first fall shipments, it being wanted at that period, as the crop of cotton is harvested about that time. That the cotton bagging in this case was needed to be *immediately shipped from Mobile to Suggsville,* to be in time for the harvesting of the crop of cotton. A witness, who stated that he had been engaged in the business of purchasing goods for country merchants in Alabama and forwarding them through Mobile, testified, that it is not usual, when goods are purchased for a correspondent with whom he is acquainted, for the agent purchasing to impose payment or security at Mobile, as a condition previous to the forwarding of the goods. The judge charged the jury that if they believed that the plaintiff did not purchase the goods as agent of the defendants, or that the same were not in fact shipped by him for them as their agent, then the defendants were not liable ; that this was a question of fact for them to decide ; that if this question should be found for the plaintiff, then neither the shipment of the goods by the plaintiff to his own agents, nor his instructions to them not to part with the possession until the payment of the price should be secured, was, under the circumstances of the case, an available ground of defence, as a sufficient objection to the plaintiff's right to recover. The jury found a verdict for the plaintiff for $353,60, on which judgment was entered. The defendants sued out a writ of error.

*D. Lord jun.* for the plaintiffs in error. The restriction imposed upon the delivery of the goods was unauthorized, and the goods therefore were at the risk of the plaintiff at the time of their loss. The restriction was contrary to the course of previous dealings between the parties, was not authorized either by express consent or by intervening insolvency, and being imposed without previous notice, might have taken the defendants by surprise, and subjected them to serious inconvenience. Their want of punctuality was known to the

UTICA,
July, 1834.

Williams
v.
Littlefield.

plaintiff before he accepted the comimssion. The restriction was contrary, also, to the nature of his commission ; he bought, as the agent of the defendants it is said, at a credit of six months, and requires from his principals immediate payment or notes at ninety days. The goods were wanted for immediate use, and he imposes terms which necessarily must delay them at Mobile. Besides, an agent to *purchase* and *forward,* he had no *lien ;* such right is inconsistent with the character in which he acted. His conduct placed him in the altitude of a vendor, imposing terms and requiring a compliance previous to the delivery of goods, and of course until compliance he remained the owner—or he must be viewed as an agent violating his duty ; for if the property in the goods was in the defendants, the restriction upon the delivery was equivalent to a conversion : by it ,the goods were placed beyond the control of the defendants, and therefore were not at their risk.

*S. P. Staples,* for the defendant in error. The plaintiff purchased and forwarded the goods to Mobile as the factor or agent of the defendants. He purchased on his own credit, became individually responsible for the price, and therefore upon the principle which gives a factor who becomes surety for his principal, or sells under a *del credere* commission, a *lien* on the price of the goods which he has sold, the plaintiff here was entitled to assert a right of lien upon the goods bought by him for the defendants. The property in the goods, after the purchase, was in the defendants, subject to the lien of the plaintiff. A factor, like a vendor, may impose his own terms where his orders are discretionary, and there is no abuse of discretion on his part ; the only difference is, that the principal *is bound to* take goods upon the terms imposed, while the vendee has his election to accept or refuse. Here was no abuse of discretion : the terms were not unreasonable. The orders were to purchase and forward the goods by the first opportunity, desiring the terms to be made as favorable as possible ; or, in other words, to ship the goods on the best terms practicable. The goods were purchased and forwarded, and the terms were as favorable as, under the circumstances of

the case, the defendants had a right to expect. The court below were fully warranted in the instructions given to the jury.

*By the Court,* SUTHERLAND, J. The defendants contended in the court below, as they do here, that the plaintiff, as their factor, purchasing for them under their instruction, had no right to impose the conditions upon the delivery of the goods which were imposed, and that he must therefore be considered either as an agent departing from his authority, or as a vendor offering terms of sale; and that in either point of view, the goods were his and at his risk, and not at the risk of the defendants at the time of their destruction, they not having been received, nor the plaintiff's terms accepted, nor his conduct ratified by the defendants.

Chief Justice Jones, before whom this cause was tried, charged the jury, that if they believed that the plaintiff did not purchase the goods as agent of the defendants, or that the same were not in fact shipped by him for them as their agent, then the defendants were not liable; that this was a question of fact for them to decide; that if they found that the plaintiff acted in the purchase and shipment of the goods as agent for the defendant, then neither the shipment of the goods to his own agents, nor his instructions to them not to part with the possession until security was given, was, under the circumstances of the case, an available ground of defence to the defendants. In other words, that as agent or factor of the defendants, purchasing and forwarding these goods under the instructions received from them, the plaintiff had a right to send them to his agent at Mobile, with directions not to deliver them to the plaintiffs until paid for or satisfactorily secured, and that they remained, notwithstanding, at the risk of the defendants; or, in still other and simpler terms, that, as purchasing factor, he had a lien on the goods until paid for.

The charge implies, that in point of law there was no violation or departure from his instructions, in the course pursued by the plaintiff, if in point of fact he purchased and forwarded the goods as agent for the defendants, and not on his own account. The verdict simply establishes that the plain-

tiff intended to be considered as factor or agent in the trans-action, and not as vendor. Was his conduct warranted by his instructions, and the nature of his agency ?

It is very evident that the defendants, when they directed this bagging to be purchased, contemplated a purchase upon time, and that they deemed it important to obtain as long a credit as possible. The plaintiff was particularly requested to make the terms as favorable as possible to the defendants. This obviously related to the credit rather than the price. It was shown upon the trial that this article was usually purchased in the New-York market upon 4 and 6 months credit, and that this purchase was actually made at six months. It appears, also, from the defendants' letter of instructions, that the defendants wished the bagging purchased and forwarded immediately ; and the reason for their solicitude upon this point is given in the testimony of one of the witnesses, who stated that cotton bagging is among the first fall shipments from New-York to the south; that it is usually shipped from the 1st of September to the 1st October; that it was necessary that this bagging should have been immediately shipped from Mobile to Suggsville (having arrived at Mobile on the 18th of October) to be in time for the cotton harvest. It is very obvious, therefore, that nothing could have been further from the expectations of the defendants than a demand for immediate payment or security, as a condition precedent to the delivery of the article. They were totally unprepared for such a demand. There was nothing in their previous transactions with the plaintiff which could lead them to expect it ; and the nature and circumstances of this particular transaction, as they must have been understood by both parties, seem totally irreconcileable with the idea of a *lien* on the part of the plaintiff upon the goods, to the extent of the purchase money for which he had made himself responsible.

I do not understand the counsel for the plaintiff to contend for the broad proposition, that a purchasing factor or agent, acting under the orders of instructions given by the defendants in this case, would of course have a lien upon the goods to the extent of the purchase money : they justify the conduct of the plaintiff, as the court below seem to have done,

upon the special circumstances of this case; they rely upon the defendants' want of punctuality in their pecuniary transactions with the plaintiff and others, and suffering their bills to be protested, &c. The defendants' want of punctuality was perfectly well known to the plaintiff before he received and undertook to execute this order. It is not pretended that any discovery was subsequently made, tending to impair the plaintiff's confidence in the defendants responsibility. There was no intervening insolvency. The defendants were then, and for aught that appears are still in good credit at home, transacting their business and meeting their engagements with as much punctuality as country merchants usually do. If the plaintiff felt it to be unsafe, or for any other reason was unwilling to make further advances, he should have declined the commission, instead of undertaking to execute it upon terms and conditions which had never been imposed or suggested in their previous transactions, and which he must have well known would be a surprise to the defendants, and would probably seriously disappoint and embarrass them.

But again: the plaintiff purchased at six months credit without interest, and yet claiming to act as the factor or agent of the defendants, exacted from them immediate payment or security at 90 days, charging them at the same time the usual commission. If he purchased as agent, the credit which he obtained was for the benefit of his principals, and unless there was a subsequent insolvency, or some other material change of circumstances, he had no right to deprive them of that advantage.

The authorities referred to have very little application to this case; they relate principally to the doctrine of stoppage *in transitu*, or to the right of lien of a factor to whom goods are consigned for sale, and not of a factor or agent who is simply commissioned to purchase and forward—and to the distinction between general and particular liens. The doctrine upon all these points is perspicuously and succinctly stated, and most of the authorities referred to by Chancellor Kent in 2 Kent's Comm., 2 ed. 634, et seq. He observes that the lien of an agent is created either by common law, or by

UTICA,
July, 1834.

Williams
v.
Littlefield.

the usage of trade, or by the express agreement, or particular usage of the parties. It is shown in this case that the general usage is against the lien claimed by the plaintiff. No instance is shown in which it was ever before set up, and it is not pretended that there was any express agreement or particular usage between these parties to justify it. A witness called by the plaintiff, on his cross-examination, states what is undoubtedly the actual mercantile practice. He says, it was the practice of his house, where they entertained doubts of the responsibility of their country correspondent to exact security before delivery ; but in such cases, their agents at Mobile were instructed to sell the goods on their account, if the person for whom they were designed did not choose to comply with the conditions ; that is, they considered themselves as vendors offering terms of sale, and not as factors or agents in such cases.

It is unnecessary to decide in this case whether, upon general principles at common law, a purchasing factor or agent has or has not a lien upon the goods purchased by him until paid for his advances, or secured for the responsibilities incurred by him. The only case referred to, bearing directly upon this point, is that of *Stevens* v. *Robins*, 12 Mass. Rep. 180, in which the court say, that by the general principles of law, the factor in that case had a right to keep possession of all the goods purchased, until he should be reimbursed his advances and secured against his liabilities. Indeed, they observe, such was the express contract between the parties. Conceding however the general principle, it would not, I think, control this case. The terms of the defendants' order, taken in connection with the evidence, *clearly show that the defendants expected the goods to be purchased upon an extended credit, and that their immediate delivery was considered all-important ;* that the sale for the season would otherwise be lost. There could have been no misunderstanding between the parties upon these two points. Such, then, was the legal effect of the defendants order ; and the plaintiff, in undertaking to exact immediate payment, and refusing to deliver the goods until paid for, if he intended to be considered as factor or agent in the transaction, violated his instructions and made the goods his

own; he became in fact a vendor offering terms of sale. There is no evidence to show the defendants' acceptance of those terms, and the goods therefore, at the time of their destruction, were at the risk of the plaintiff, and he cannot recover their value from the defendants. The judgment of the court below must therefore be reversed.