## BROOKS *vs.* BRYCE & RENNIE.

A *factor* or purchasing agent, in actual possession of two parcels of goods obtained under distinct orders, for both of which he is in advance, although paid for one of the parcels, may avail himself of the doctrine of *lien* in respect to the whole of the property.

*It seems* that though only one of the parcels had come to hand, and he had been paid his advances on it, he might still have set up a *lien* upon the parcel received for his *liabilities* incurred in respect to the other parcel.

The acceptance of a draft payable at a future day, in payment of one parcel, is not a waiver of the *lien* of the factor, especially when in the receipt of the draft it is declared that it is to be in full *when paid*.

ERROR from the superior court of the city of New-York. This was an action of *trover*, for fourteen rollers for printing calicoes, brought by Bryce & Rennie against Brooks. In the autumn of 1833, Brooks, at the request, it seems, of Bryce & Rennie, sent two distinct orders to a correspondent in Manchester, England, to have a quantity of rollers prepared and engraved and forwarded to him in New-York, with all possible dispatch. The orders were received, duly attended to, and the rollers shipped for New-York. The first parcel, consisting of the fourteen rollers for which the action was brought, arrived at New-York about the middle of February, 1834. The whole were paid for by Brooks. On the 11th March, Bryce & Rennie gave Brooks a draft at four months on a house in Philadelphia, for $1623,62, the cost of the first parcel and the charges thereon, and Brooks gave a receipt for the draft, which, *when paid*, to be in full for the invoice of the first parcel. The second parcel came to hand about a month after the arrival of the first, but whether *before* or *after* the giving of the draft does not very distinctly appear from the bill of exceptions. The cost of the second parcel was £132 4s. 1d. sterling. After the giving of the draft, Bryce & Rennie demanded the first parcel of rollers, which Brooks refused to deliver *unless security was given* for the cost of the second parcel. Bryce & Rennie were proprietors of works for printing calicoes, and it seems that the rollers were intended for their operations in the *spring*.

Brooks v. Bryce.

The plaintiffs' works were destroyed by fire on the 24th March, whereby they became insolvent. In July the draft given to Brooks was duly paid, and in the same month this suit was commenced. In *August* following both parcels of rollers were sold by Brooks to other calico printers, after notice to Bryce & Rennie, and brought about their full value. The chief justice charged the jury that *at the time of the demand* the property in the first parcel of rollers was vested in the plaintiffs, and that the defendant had not such a *lien* upon that parcel as to entitle him to retain and hold the same against the plantiffs. The defendant excepted to the charge, and the jury having found a verdict for the plaintiffs, judgment was entered in their favor. The defendant sued out a writ of error.

*J. Coit*, for the plaintiff in error.

*J. Prescott Hall*, for the defendants in error.

*By the Court*, Cowen, J. In considering this case, I shall assume that the rollers secondly ordered had arrived, and were actually in the hands of the defendant, when the plaintiffs made the demand of the rollers in question. They do not pretend that any available demand could be made till they had given the bill of March 11th ; and the testimony is conflicting, and if the fact were material, it should, therefore, have been left to the jury, whether the rollers secondly ordered had so arrived. Indeed, the counsel for the plaintiffs below did not deny on the argument, that the fact must be taken to have been so ; and accordingly admitted it. The second subdivision of the second written point of the plaintiff in error is in these words ; " The second parcel of rollers were actually received when the demand for the rollers in suit was made." According to my notes, when the counsel for the plaintiff in error called our attention to this, it went off on the admission of the opposite counsel that it was correct.

Now I do not intend to admit, that if the rollers secondly ordered had only been on their way from Manchester, in the

hands of the defendant's carrier, or even if the second order had merely reached Manchester, and could not be revoked, the lien for the whole would not have attached on both parcels, the same as if the second had been in the hands of the defendant. In the one case, a possession by the defendant's carrier would have been his possession; and in the other, as he stood necessarily in advance, and the last rollers would arrive for ought we see, to answer about the some purposes of spring business as the first, it would be difficult to collect any agreement by the defendant to waive his right of *general lien*, if he otherwise had any on their actual arrival. *Hodgson* v. *Payson*, 3 Harr. & John. 339. *Jourdaine* v. *Le Fevre*, 1 Esp. R. 66. *Stevens* v. *Robins*, 12 Mass. R. 180, 182. These cases show that a factor or purchasing agent may retain for liabilities incurred, as well as for actual advances.

But I assume, as the case and counsel seem to have done throughout, that the rollers secondly ordered had arrived; and we then have a foreign purchasing factor in actual possession of two parcels of rollers, under distinct orders from his principals, for both of which he is in advance, and for one of which he has been paid, setting up and enforcing a general lien. I say a *foreign* purchasing factor within the rule which makes a bill of exchange drawn on another of the United States a foreign bill. I suppose this makes no difference, for the lien of a domestic factor or agent is the same, Paley on Agency, 110; 1 Black. R. 654; but it brings the defendant below in all respects within the English books which declare the general lien of a factor. Paley on Agency, 109. *Green* v. *Farmer*, 1 Black. R. 651, 654.

What is this *general lien*, as contradistinguished from a *particular lien?* The *first* is a right of the factor to hold all the goods of his principal which come into and remain in his hands as such factor, until the general balance, that is to say, all debts which his principal owes him, and which have arisen and become payable in the course of his business as factor, have been paid. LORD MANSFIELD, in *Godin* v. *London Assur. Co.*, 1 Burr. 494, and the cases there cited.

*Hodgson* v. *Payson*, 3 Har. & John. 242. I state the rule under the qualification understood to be applicable to an attorney, who has a general lien on the effects of his client. Montagu on Lien, 32, 59, and the cases there cited. Grah. Pr. 59, 60, 2d ed., and cases there cited. *Stephenson* v. *Blakelock*, 1 Maule & Selw. 535. Whereas, a *particular lien*, is confined to the debt due for the specific article, as we see in ordinary sales for cash. It makes no difference, therefore, merely that the *property* in the rollers first ordered had passed at the time of demand. The right of general lien still continues till the factor parts with the possession, 1 Burr. *ut supra*, unless there be some arrangement between the parties incompatible with the idea of lien.

Had the debt been due to the defendant for the *first parcel only*, and not for the second, as if there had been a credit given for the latter, this would have made the lien particular on each for the price of each; and so if there had been an agreement to deliver the first without payment for the second. The right of lien is given by the law, and may be waived by an agreement either express or plainly to be implied from circumstances: as where the obligation to pay for another parcel is extended by stipulation, or by the receiving of a note or bill of exchange generally at a long credit, not yet expired. *Stevenson* v. *Blakelock*, 1 Maule & Selw. 535. Otherwise if the bill be short, and especially if protested before the possession of the goods be parted with. Id. The counsel for the defendants in error insists that one or the other of these facts was established in proof. He says, 1. "That the terms and dates of the orders, and the nature of the importation, it being to answer the spring trade, and to be executed with all haste, show that the understanding was that each parcel was subject to no other lien than for its own price." It seems to me that the circumstances, so far from leading to such an inference as a necessary one, which alone could warrant the strong direction of the learned judge, would scarcely form a case for the jury. That the importation was to be hastened with a view to the spring business, is not at all incompatible with the idea that the payment by the plaintiffs was also to be

hastened, to be prompt, and fortified by the security of a general lien. That a delivery for the spring business would precede even the month of April, does not appear. The case cited of *Williams* v. *Littlefield*, 12 Wend. 362, 370, was of a plain agreement by the purchasing agent to procure and deliver the goods on a credit, though the agreement was inferred from various circumstances.

Then it is said, 2. "That the defendant accepted a *negotiable* security, payable at a future day, and thereby waived his lien on the parcel in suit by thus giving a credit." That the bill was negotiable, if that be material, I do not perceive. It is recited in the receipt at the foot of the invoice, and mentioned in the testimony of Brooks as being produced; but it is neither set out in *hæc verba*, nor any where mentioned as being negotiable. Be this as it may, it was not, by the very terms of the receipt, to operate as payment except on the condition of being paid. Such a written declaration, which may be taken as that of both parties, is at least far from strengthening the inference, if the other circumstances would tend to it, that even the first parcel was to be taken as paid for before the bill was turned into cash. I admit, however, that the ground taken by the defendant, when the demand came to be made, was strong evidence that he would have been content to consider the bill as an absolute payment, provided he could have been paid for the second parcel. I do not think that any thing more can be inferred from it.

The point raised, that the importations were on separate and distinct orders, and therefore the goods not the subject of general lien, is not compatible with the doctrine of lien, as I understand it, and as I have sought to deduce it from the authorities.

My opinion is, that the judgment should be reversed, and a *venire de novo* go from the superior court.

Judgment reversed.