*371 After advisement the following opinions were delivered:
By the Chancellor.
The principal question presented by this case is, whether a purchasing agent has a general lien for advances made or liabilities incurred for his principal. Where the purchase is limited to a single article, this question cannot arise, for then, of necessity, the lien is particular. Here, however, there were two transactions, and the doctrine of general lien applies. If the plaintiffs in the action intended to have insisted on a waiver of the lien, they should have submitted that question to the jury, for from the very form of the receipt it may well be questioned whether the defendant did not retain his lien. There is no hardship in the case. The creditors, who had become entitled to the property in consequence of the insolvency of the plaintiffs, ought to have given the security demanded by the defendant for the responsibility in-purred by him for the second parcel of goods. I am of opinion that the judgment of the supreme court should be affirmed.
By Senator Verplanck.
The question, in this case, is whether or no the defendant here, as a factor purchasing on commision, was entitled under the circumstances of the case, to retain certain articles imported by him for the plaintiffs, by reason of his general lien for advances and charges in his agency: the agency consisting only of a second similar importation, in addition to that of the machinery upon which the right of lien is now claimed.
The application of this right, in the present case, is denied on several grounds: 1st. It is argued that the defendant was not a factor selling the goods of his principal, but merely one purchasing on commission, and therefore has not the same legal right of general lien which the custom of trade and commercial law have given to the selling factor.
*372 The lien of the purchasing factor, it is contended, is merely particular, giving a right to retain only for advances or charges upon the identical goods so held, but not for a balance of general accounts upon all similar purchases. This point appears never to have been settled by direct adjudication, in the English courts or those of our own state. The case of Williams v. Littlefield, 12 Wendell 362, in which this question was raised before our supreme court, does not afford a direct decision on the point, nor indeed any positive expression of the opinion of the court. Upon general principles I can perceive no sufficient reason for narrowing down the salutary, efficient, and ordinarily cheap and peaceful remedy of a general lien to the advances of the factor upon goods sold on commission. I perceive, indeed, that the English cases and books of commercial law sometimes regard and describe the factor as one who receives goods for sale on commission, (as per Lord Tenterden, 2 Barn, & Ald. R. 143;) but this, I presume, arises from the more ordinary course of business, and does not exclude the idea of the factor being also a purchasing agent. Accordingly, we find that goods bought for an absent principal, are said, both in the books and in ordinary use, to have been bought by a factor. From the very nature of the business the legal enforcement of a general lien must be comparatively rare, and this sufficiently accounts for the absence of adjudged cases in the books. The general balance due to the selling factor must arise ordinarily from charges upon goods formerly received and sold, and is to be applied to the articles still in his possession, which, as he holds them for sale must afford some security for the advances above the amount of charges that may be specifically applied as a lien upon them. But as purchases made on commission are generally either for immediate use, or else for delivery and transportation elsewhere, it will result that the articles remaining in the factor’s hands on such purchases, and on which, in case of necessity, the lien is to be applied, will be those still unpaid for by the princi *373 pal. These, consequently, can afford little or no security beyond the amount of their own cost. This must evidently be the common course of business. Yet exceptions may often occur; and when they do they are entitled to be governed by the same rights of lien, as apply to other dealings between principals and factors.
When purchases are made on the strict account of another, the general character of the factor applies alike to him who buys and to him who sells on commission, and is entrusted in either case with the possession and apparent ownership of the property. The advances of funds or of credit, the expenses and commissions arising on purchases, are surely not less entitled, on any reason of natural equity or of commercial advantage, to be protected by a general lien upon the property of his customer, thus coming into the factor’s possession in the course of his business, than those of the merchant who merely sells on commission. Indeed, so far as the risk incurred, and the proportion of the advances to the amount of property or funds in the factor’s hands, give weight to the claim of a general lien, the reasons of equity and mercantile policy, or even necessity, seem stronger in favor of giving special privileges and protection to the purchasing factor, than to him whose business is confined to selling the-goods of his principal. Moreover, many of the advances and expenses of the selling factor upon the goods of his employer, are often actually purchases on his account, made necessary by the ordinary course of business, or by accident, for the sale or the security of his commodities. If such advances are allowed to create a general lien, why not the purchases alone, where there are no goods to be sold 1 In large and continuous transactions between a general factor and a distant principal, it would be sometimes difficult to distinguish between charges for advances on purchases and those for many expenses upon goods sold. It would appear, then, to be alike in contradiction to the reason of the thing and the convenience of trade, to establish different legal rules *374 as to transactions and rights so nearly alike in their nature, and differing so little as to any principle of equity or of general legal policy.
fin<i this view of the identity of the legal rights of these two classes of factors, or rather of these two branches of the factors’ business, confirmed by some of the best text writers on commercial law, who extend the definition of the word factor, so as expressly to include the buying as well as the selling on commission, and make no distinction whatever in relation to the lien on goods sold and upon those bought. Thus, Judge Story: “ A factor may buy and sell in his own name as well as in the name of his principal. A factor is entrusted with the possession, management, control and disposal of the goods to be bought or sold, and has a special property in them and a lien on-them.” Story on Agency, § 34. So also, Chancellor Kent: a A factor has not only a particular lien upon the goods of his principal in his possession, for the charges arising on account of them, but he has also a general lien for the balance of his general account, arising in the course of dealings between him and his principal; and this lien extends to all the goods of his principal in his hands in the character of a factor.” 2 Kent’s Comm. 640.
In conformity with the general opinions thus expressed or intimated by these eminent commentators, is the decision of the supreme court of Massachusetts, in the only case of authority which I have found expressly defining the powers and rights of purchasing factors. In Stevens v. Robins, 12 Mass. Rep. 182, the factor had contracted for the purchase of a large quantity of leather for his distant principal, to be delivered and paid for at different times. After a large quantity had been received and the amount of its price drawn for, and paid on general account to the factor, he still remaining liable for the payment for the leather yet to be delivered, it was held that the factor :had a general lien entitling him to retain the part so received and remaining in his possession, in order to indemnify *375 himself for his liabilities on the whole contract. There was, indeed, but a single order for purchase, but that was for divers parcels of leather to be delivered and to be paid for at different times. The language of the court, accordingly, is this: “We think that by the general principles of law the factor had a right to keep possession of all the goods purchased, until he should be reimbursed his advances and secured against his liabilities.” In opposition to these reasons' and authorities, I cannot find a single case either in the English books or in the reports of any of our states, sanctioning the distinction contended for, and giving a general lien to the selling factor and only a particular lien to the purchasing factor. I must, therefore, hold the distinction to be unfounded.
II. The right of retaining the property now in dispute, as security for the balance of general advances or liabilities is also denied, because there being here but two orders or transactions, it is maintained that these were separate and distinct, so that no general agency existed and no general balance of account could result. This again is, in my view of the subject, an impolitic narrowing down the rule and usage of Commerce, without any positive legal authority, and not in consonance with the principles governing such transactions. The right of general lien is the right of the factor to retain all or any of the goods of his principal coming into his lawful possession in the course of his business as such factor, until the debts which his principal has incurred to him in that course of business are paid: or, as the rule is more briefly expressed by Lord Mansfield, “ A factor to whom a balance is due has a lien upon all the goods of his principal as long as they remain in his possession.” Godin v. London Assur. Co. 1 Burr. R. 494. Now, two transactions of the same nature, where goods are bought or sold on commission, are as sufficient as twenty, to create a balance of debt which may apply as a lien upon goods for advances or charges not incurred upon the very parcel to which the lien is applied. The *376 distinction between the general and the particular lien is well settled. The latter is the right to retain only on account of charges, expenses or labor bestowed upon the special thing retained as security. The general lien does not depend upon any prolonged and continuous course of business or agency; but solely upon the indebtedness of the principal to his factor, arising out of that mutual relation and no other, and applies to any property being in the factor’s possession in consequence of such agency. Such an indebtedness and such an application of the lien may arise in two transactions, and with respect to two lots of goods, just as distinctly as in the longest course of mutual dealings. The verbal resemblance between a general agency and a general lien, does not authorize the conclusion that the latter depends exclusively upon the former. Neither the reason of the thing, nor the the language of any of the authorities warrant this inference. It is the simple fact of a balance being due the factor upon the account between him and his principal, in that relation, which gives the lien. Such is the uniform language of the cases and books. (See the cases cited by Lord Mansfield, as well as his own rule in Goden v. London Assur. Co.) If there be but one transaction and one parcel of goods, then the balance is due only on that one transaction, and the lien can attach only to that parcel of goods; as soon as there is more than one such transaction by sale or purchase, the lien extends to other goods than those on which the debt exclusively arose, and so becomes general. Thus the case of Stevens v. Robins, just cited, was not one of a general agency; it was a single order to purchase leather to be delivered and paid for at different times, but all within a few months, and it was confined to that single article. Yet there the doctrine of a general lien for the liabilities of the purchasing factor was applied by the court.
III. The third ground is covered by the decision of the superior court of the city of New-York, where this cause was commenced, and with their decision I concur, though *377 it was reversed by the supreme court. It has been held from an early period of our law, 2 Kent’s Comm,. 639, note, that the right of lien, whether special or general, is waived whenever the party entitled to it enters into a distinct special agreement, either positively inconsistent with the continuance of the lien as such, or else indicating that he looks to some other security instead of that thus afforded by the law. Lord Eldon thus states and applies the rule: " In the case of a factor who has a lien both for his expenditures upon the goods in his possession and his general balance upon former transactions, entering into special contract for a particular mode of payment, he loses his lien. If the possession commenced under an implied contract and afterwards a special contract is made for payment, in the nature of the thing the one contract destroys the other.” Cowel v. Simpson, 16 Vesey R. 276. The same principle has been applied, though modified according to the circumstances of each case, to the lien of carriers, wharfingers and workmen authorized by the general or special usage of trade. 5 Maule & Sel. 180. 4 Barn. & Ald. 50. 18 Johns. R. 157.
In the present case, previously to March 11, 1835, the defendant had informed the plaintiffs that the terms of payment for his importation were either cash or approved paper. On that day he receives a draft for the amount charged, which was afterwards paid at maturity, and which as he received it, must be presumed to be approved; and he gives a receipt for the draft, endorsed upon a statement of the invoice, with his charges, commissions, &c. It is understood and averred by both parties, that the order for the rollers was to meet the spring manufactures, and the payment by the draft is given to obtain the articles for that purpose. If the rollers were to be retained until the draft was paid as well as all the remaining liabilities of the factor, there was no object in giving the draft at that time. The retaining possession of the first imported rollers to secure payment for the other after-liabilities is then, *378 on the face of the transaction inconsistent with the new agreement by which a draft at four months after date is received for the amount of the first debt. “ In the nature of the thing, then,” to use Lord Eldon’s phrase, “ the new special contract destroys the former implied one.” Besides, the invoice and receipt are specifically for the rollers first ordered and imported. A new and distinct credit is given for them. But the ground upon which the claim to retain these articles was placed, was the securing the payment of advances or liabilities accrued or to accrue on the second order; that is, in the language of the cases, for the securing the payment of the general balance of mutual accounts. But by the specific contract, the draft was not to be carried, when paid, to the plaintiffs’ credit in the general account, but to be applied specifically in discharge “in full for the invoice of the rollers” first' imported. There then remains no longer any general balance to create a general lien.
Moreover, the right of lien is limited by the actual possession as agent. Here the factor, by the delivery of a receipted invoice, gives to his principal the usual documentary evidence of ownership, and the consequent right of possession. He waives all claim to any right of property, which, perhaps, he might have claimed for his own security. Nor was the plaintiffs’ right of possession made contingent upon the discharge of any general balance. The delivery of this invoice seems to me so far analogous to the cases of constructive delivery, on sales, &c. by giving a bill of parcels, or an order on a storekeeper. I think, for these reasons, that the chief justice of the superior court was right in charging, that “ the property of the rollers mentioned in the invoice upon which the receipt was endorsed, was vested in the plaintiffs; and that the same were not then subject to any such lien of the defendant as to entitle him to retain and hold the same.” This is the only matter excepted to, and upon which the motion for a new trial is grounded. It is the expression of the *379 judge’s opinion of the law of the case upon the facts presented, and appears to me to be correct.
My view of the whole transaction is briefly this: Brooks was entitled to insist upon his lien for the whole amount of debt due him, and of liabilities actually incurred by him in his purchases as factor, but not for the other debts and demands for goods sold. He might apply that lien to either importation or both of them so long as the property remained in his actual possession as factor. He makes a new contract and gives a new credit on the articles of the Dfirst importation, under circumstances which render the new agreement apparently inconsistent with the intention of retaining his lien for a general balance. He passes over that right in silence (which he might have saved by ex_ press reservation) when he receives a new and approved security. He separates that parcel of goods, and the new security so received, from his other dealings with the same party, and so places these in a distinct account. He gives the plaintiffs a receipted invoice, with a statement of charges, &c. so as to furnish him with the documentary evidence of property. I consider him, therefore, as clearly waiving his right of retaining the property. The judgment of the supreme court should, therefore, in my opinion, be reversed.
By Senator Fubmax.
From an examination of this case, it seems to me that the common sense view of the matter is, that the plaintiffs in error were desirous to obtain from England certain rollers, by which they could manufacture a certain description of spring goods; and which could be made only during a particular season of the year, in order to have the benefit of the market. It became necessary, therefore, that the order for those rollers should be executed with dispatch; and that such was the understanding of the parties is shown by the two orders of September 7, and October 15, 1833: the first of which requires (C the utmost dispatch,” and the second “ every possible dis *380 patch,” showing clearly that the desire that every facility should be given to the manufacture of those rollers was confined to the second order, as was contended for by counsel on the argument. Upon the rollers being finished in order to carry out the object and intent of the parties in procuring the same, it was requisite that they should be delivered with promptitude to the plaintiffs in error as the invoices should severally arrive, otherwise the plaintiffs would lose all the benefit which they had promised themselves by entering into the contract. It must, therefore, be evident that as between the parties themselves there never could have been any intention to create a general lien; but that they designed that those two orders should be distinct invoices, and should each be delivered as soon as they arrived.
But if the law will create a lien against the plain intent and meaning of the parties, as gathered from their acts in the course of the transaction, then there is, in my judgment, sufficient in this case to show there could not have been a general lien, even if the supreme court be right, that both parcels of rollers had arrived when the receipt for the draft was given by the defendant to the plaintiffs in error; and that the defendant in error, who now sets up this claim, did, in writing under his own hand, repudiate such claim for a general lien at the time when he should have urged it, if it was ever his intention to do so. That receipt shows upon its face, that it applies only to the invoice of the first parcel of rollers; and that it was a separate and distinct matter from the second order. So that even if there should have been at law a general lien created in this case, (which, however, I do not believe or in the least admit,) this receipt will operate as a waiver of it;, or rather, ip my judgment, as a declaration of the defendant, repudiating the idea of any such general lien existing; and the law cannot and will not create a general lien for the security of any party where he declines or repudiates it himself. But again: if it should be still contended, that not *381 withstanding the foregoing facts and views of the case, such general lien does exist, it was discharged by the defendant taking from the plaintiffs as satisfactory, the draft for the amount of the first invoice. That such was the operation and effect of taking that draft is apparent, for no principle is better settled than that the taking of any security will discharge the previous general lien. See Story on Agency, p. 377, pl. 365.
I have first shown that there never was any intention, as between these parties to create a general lien, but that they must have, designed that each invoice should be delivered as it arrived; and secondly, that if, notwithstanding such intent, the law would, in such a case as the present create a general lien, such lien was discharged, first by the act of the defendant in error in giving the receipt, which operates to repudiate the idea of any such lien; and secondly, by taking from the plaintiffs the draft as satisfactory security. But there is still another view of this matter, which has a strong bearing upon the decision of this cause, and in which my judgment differs somewhat from the other opinions expressed in this matter. I think no general lien can exist, unless the fact of the claimant being general agent or factor is established; and that there can be no inference of a general state of agency or factor-age from one or two orders for purchasing specific articles given under such circumstances as the present. No case, to my knowledge, exists either in this country or England, laying down any principle which authorizes such an inference. The defendant, in error may have been the agent of the manufacturer in England to procure orders, as is very frequently the case, as known to most acquainted with commercial transactions; and if the defendant, under the circumstances, should be held the general agent or factor of the plaintiffs, as well might his principal in England have been held such general factor, if a single order had been sent direct to him in place of being sent through his agent in this country. This may not be the fact in the *382 present case, but it is sufficient to show that the position which the defendant occupied as to the plaintiffs should have been proved, if the claim of a general lien was sought to be based upon it. I do not contend that the defendant r . , . . would not have been entitled to a lien upon each invoice of rollers until the costs and expenses thereof were paid; on the contrary, he would have been and was entitled to such lien; but that would not make him a general agent or factor, but only a special agent, having a particular lien.
On the question being put, Shall this judgment he reversed?. the members of the court divided as follows:
In the affirmative: The President of the Senate, and Senators Denniston, Dickinson, Furman, Hawkins, Humphrey, Lee, H. A. Livingston, Moseley, Nicholas, Peck, Rhoades, Taylor, Yerplanck, and Works—15.
In the negative: The Chancellor, and Senators Clark, Ely, Hunter, Johnson, Paige, and Scott—7.
Whereupon the judgment of the supreme court was Reversed.